IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

COURTNEY DUNN,

       Plaintiff,

v.

       CIVIL ACTION

       No. 10-2074-CM

ANTHEM MEDIA, LLC,

       Defendant.

## MEMORANDUM AND ORDER

Plaintiff Courtney Dunn brings this action, alleging claims of pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), against defendant Anthem Media, LLC ("Anthem"). This matter is before the court on Defendant's Motion for Summary Judgment (Doc. 25). For the following reasons, defendant's motion is denied.

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The relevant facts—either undisputed or, where disputed, construed in the light most favorable to plaintiff—are as follows: Anthem is a Kansas limited liability company, organized in August 2001. Drive Digital Media LLC ("Drive Digital") is also a Kansas limited liability company. Drive Digital was organized in May 2008. The two companies are solely owned by Brian and Angela Weaver. Anthem provided start−up capital for Drive Digital; the loan from Anthem to Drive Digital was not

memorialized. Anthem, Drive Digital, and Anthem Motorsports, Inc. ("Anthem Motorsports"), another company owned by the Weavers, are sister companies, referred to by the trade name "Anthem Media Group." Anthem Media Group is not a separate legal entity or holding company.

Anthem handles the accounting for all of the companies within the Anthem Media Group. All of the Anthem Media Group companies are all located in the same office, on the same floor. They have the same Employee Handbook. They also have the same group health insurance policy, in which the employees of each Anthem Media Group company are counted as one group; the same workers compensation policy; and the same liability insurance policy. Ms. Weaver is not employed by any particular company, but is the vice-president of administration over all of the Anthem Media Group companies. She is also in charge of human resources for the Anthem Media Group companies. According to Mr. Weaver, Drive Digital employees are paid by Anthem Motorsports, but Drive Digital paid for the use of Anthem Motorsports employees. All of the companies of the Anthem Media Group combine to provide clients with a full-service marketing firm.

In 2007 and 2008, Anthem did not have fifteen or more employees for each working day in each of twenty or more calendar weeks, but it did in 2009. When combined, the Anthem Media Group companies employed over fifteen employees in 2008.

In June 2008, a letter was sent to plaintiff confirming "the discussions [she] had with Brian Weaver relative to [her] offer of employment with Anthem Media, LLC." (Doc. 26, Ex. G.) In August 2008, a second substantially similar letter was sent to plaintiff to correct typographical errors in the June letter. (Doc. 26, Ex. H.) The August letter does not reference employment with Anthem, but does not specifically withdraw the statement from the previous letter. Both offer letters state that she is "being offered a position as a . . . Producer for Drive Digital Media beginning July 7, 2008" and that she will be eligible for benefits "as explained in the Anthem Media Group Employee

Manual."  (Doc. 26, Exs. G and H.)  The offer letters were on Anthem Media Group letterhead.  The June letter was sent by Brian Weaver, without a signature block.  The August letter was sent by Matthew Barksdale as "President, Drive Digital Media."  (Doc. 26, Ex. H.)

Plaintiff began work for one of the Anthem Media Group companies, but the parties dispute whether she was employed by Drive Digital or Anthem.  Her immediate supervisor was Matthew Barksdale, President of Drive Digital; her work email address was cdunn@drivedigitalmedia.com; and her email signature identified her as an employee of Drive Digital.  Plaintiff received two paychecks from Anthem Media and the rest from Anthem Motorsports.  Sometime in November 2008, when plaintiff was pregnant, Mr. Barksdale told plaintiff she was being terminated, although plaintiff asserts that Mr. Weaver made the final decision to terminate her.  That same month, there were advertisements for the Executive Producer position, plaintiff's job.  Plaintiff alleges that the discrimination continued until her employment ended on January 22, 2009.

Title VII makes it unlawful for employers to discriminate against an employee based on the condition of pregnancy.  *See Homburg v. United Parcel Serv., Inc.*, No. 05-2144-KHV, 2006 WL 2092457, at *8 (D. Kan. July 27, 2006) ("The Pregnancy Discrimination Act ("PDA") amended Title VII in 1978 to bring the condition of pregnancy within the definition of sex discrimination."); *see also Atchley v. Nordam Group, Inc.*, 180 F.3d 1143, 1148 (10th Cir. 1999) (explaining the analysis of pregnancy discrimination claims).  Defendant argues that plaintiff cannot prevail on her discrimination claims because (1) plaintiff was not an employee of Anthem and (2) Anthem is not covered by, and thus does not have to comply with, Title VII.

"Whether an entity qualifies as an employer is generally considered a factual question to be resolved by the jury."  *Mayfield v. Oklahoma*, No. CIV-08-581-C, 2009 WL 1212274, at *2 (W.D. Okla. Apr. 30, 2009) (citing *Bristol v. Bd. of County Com'rs of County of Clear Creek*, 312 F.3d 1213,

1221 (10th Cir. 2002)).  Plaintiff asserts that Anthem was her employer for purposes of Title VII under the single-employer test.  The single-employer test allows a plaintiff who is the employee of one entity to seek to hold another entity liable by arguing that the two entities effectively constitute a single employer.  *Bristol*, 312 F.3d at 1218.  "[T]he single-employer test asks whether two nominally separate entities should in fact be treated as an integrated enterprise."  *Id.*; *see also Sandoval v. City of Boulder, Colo.*, 388 F.3d 1312, 1323 (10th Cir. 2004).  When making this determination, the court generally weighs four factors:  (1) interrelations of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership and financial control.  *Bristol*, 312 F.3d at 1218.  The third factor—centralized control of labor relations—is generally considered the most significant.  *Id*.

Upon review of these factors, the court finds that plaintiff has presented sufficient evidence to permit a jury to determine that Anthem is her employer pursuant to this test.  The Weavers are the sole owners of Anthem and Drive Digital.  There are no other officers or directors.  The companies are located in the same office, on the same floor.  Both companies are a part of the Anthem Media Group.  As part of that group, they have the same vice-president of administration, the same human-resources manager, the same Employee Handbook, the same group health insurance policy, the same workers compensation policy, and the same liability insurance policy.  Anthem handles the accounting for both companies and Anthem Motorsports pays the employees of both companies.  Further, Anthem provided start−up capital for Drive Digital without a memorialized loan.

Most importantly, the companies have a centralized control of labor relations.  Mr. Barksdale is president of Digital Media, but the evidence suggests that Mr. Weaver may have had the right to hire and fire plaintiff.  Mr. Weaver issued the first offer letter, which referenced employment discussions between himself and plaintiff.  And, although Mr. Barksdale informed plaintiff of her

termination, Mr. Weaver may have made the final decision to terminate plaintiff. This evidence could support a jury finding that Anthem and Digital Drive constitute a single employer, and therefore summary judgment is inappropriate on this basis.

Anthem next argues that it is not covered by Title VII because it did not have the requisite number of employees when the alleged discrimination occurred. To meet the definition of employer under Title VII, Anthem must have had "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000(e)(b). When calculating the number of employees, the court may use the single-employer test. *See e.g., Calvert v. Midwest Restoration Servs., Inc.*, 35 F. App'x 798, 801 (10th Cir. 2002) (applying the single-employer test to analyze the fifteen-employee requirement).

Anthem asserts that the discrimination occurred in 2008; plaintiff believes it occurred in 2008 and 2009. Either way, defendant's motion must be denied. As explained above, there is sufficient evidence to permit a jury to determine whether Anthem should be combined with the other Anthem Media Group companies under the single-employer test: The companies have the same owners, office space, Employee Handbook, insurance policies, vice-president of administration, and human resources manager. And there is evidence that Mr. Weaver makes employment decisions for the companies. The Anthem Media Group companies employed more than fifteen employees in 2008. Thus, under the single-employer test a reasonable jury could determine that Anthem had more than fifteen employees in 2008. The parties agree that Anthem had the requisite number of employees in 2009. Accordingly, summary judgment is not warranted on the record presented.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 25) is denied.

Dated this 14th day of September 2010, at Kansas City, Kansas.

s/ Carlos Murguia<br>
**CARLOS MURGUIA**<br>
**United States District Judge**